Argued November 26, 1919, affirmed as modified January 27, 1920.

# THIMSEN *v.* REIGARD.*

### (186 Pac. 559.)

**Corporations — Corporate Property not to be Sold in Controversy Between Stockholders.**

1. In a suit by a stockholder against other stockholders and against the corporation to have a trust declared in lands belonging to the corporation, etc., arising out of fraud of defendant stockholders, the property of the corporation will not be sold, where another stockholder, not a party to the action, will be prejudiced, and plaintiff on prevailing, if satisfaction cannot be had from the other stockholders under the judgment, will be given a lien for his proportionate share in the corporation; fraud having been false representations as to cost of the corporate property.

**Joint Adventures—Rights as Between Members Controlled by Principles of Partnership.**

2. The rights of joint adventurers in matters between themselves are governed by the principles constituting and controlling the law of partnership.

> [As to the mutual rights and liabilities of parties to joint adventure, see notes in 17 Ann. Cas. 1022; Ann. Cas. 1912C, 202; Ann. Cas. 1916A, 1210.]

**Joint Adventures—Member may not Make Secret Profit.**

3. Where plaintiff and defendant entered into a joint adventure consisting in purchasing land for resale, defendant had no right to purchase the land from himself, either directly or indirectly, or to make profit on the deal, except with the full knowledge and consent of plaintiff.

**Joint Adventures—Burden on Member to Show Good Faith.**

4. Where plaintiff and defendant entered into a joint adventure consisting in purchasing certain land for resale, defendant to act as plaintiff's agent in purchasing the property, the burden of proof was upon such defendant, in an action by plaintiff for an accounting on account of secret profits made by him, to show that he fully informed plaintiff of all the facts within his knowledge bearing upon the transaction.

**Principal and Agent—Agent may not Make Secret Profit.**

5. An agent who makes a secret profit in the execution of his trust as such agent may be compelled to account to his principal.

---

*On effect of secret advantage to one member of a joint adventure, see note in 50 **L. R. A. (N. S.)** 1046.        REPORTER.

Principal and Agent—Knowledge Acquired by Agent in Prior Transaction Knowledge of Principal.

6. The rule that notice to the agent is notice to the principal applies not only to knowledge acquired by the agent in the particular transaction, but to knowledge acquired by him in a prior transaction and present to his mind at the time he is acting as such agent in the particular transaction, provided it be of such character as he may communicate to his principal without breach of professional confidence.

From Coos: JOHN S. COKE, Judge.

Department 2.

The plaintiff, Katharine Thimsen, brought this suit against Charles I. Reigard and Fannie L. Reigard, his wife, seeking to have defendants declared to be trustees for plaintiff of a portion of certain lands and shares of stock standing in their names. Plaintiff also instituted a suit against the Reigards and the Laurel Investment Company to compel an accounting and restoration to the company of certain moneys and property. Issues were made and the two suits were consolidated and tried as one, by consent of counsel for the parties. The trial court rendered a decree in favor of plaintiff in each suit, and defendants appealed.

AFFIRMED AS MODIFIED.

For appellants there was a brief over the names of *Mr. George Watkins* and *Mr. Charles I. Reigard,* with an oral argument by *Mr. Watkins.*

For respondents there was a brief over the names of *Mr. William T. Stoll* and *Mr. Dwight E. Hodge,* with an oral argument by *Mr. Stoll.*

BEAN, J.—After reading the testimony we find that the record discloses the following facts: During the time of the transactions in question in this suit, Kath-

arine Thimsen, the plaintiff, was a resident of the State of Minnesota, and had never been in the county of Coos, Oregon. The defendant, Charles I. Reigard, was an attorney at law and had done some business for plaintiff's family, in Minnesota, where he resided until about 1910. On January 18, 1910, Mr. Reigard had visited Coos Bay and procured two options to purchase two 40-acre tracts of land from the Archer Land Company for $4,000 each, or a total price of $8,000. Pursuant to such options the Archer Land Company, on January 17, 1910, authorized the execution of deeds for the tracts of land and executed a deed to one 40-acre tract, leaving the name of the grantee therein blank, and forwarded the same to a bank in Owatonna, Minnesota, to be delivered upon the payment, by Charles I. Reigard of $4,000. February 16, 1910, the Archer Land Company, at the request of Mr. Reigard, executed a deed for the remaining 40-acres of the land to B. E. Lewis, the sister of defendant Fannie L. Reigard, in trust for plaintiff, Katharine M. Thimsen, and Charles I. Reigard, and delivered the same to defendant Charles I. Reigard.

January 18, 1910, plaintiff appointed defendant, Charles I. Reigard, her agent to purchase an interest in the two tracts of land. It was to be purchased by them jointly. For that purpose she delivered to him $3,600 in cash and a promissory note for $900, aggregating $4,500, when they signed the following agreement in duplicate:

"Owatonna, Minn., Jan. 18th, 1910.

"Received from K. M. Thimsen, cash in the amount of $3,600.00 and one promissory note for $900.00 dated Jan. 18th, 1910, to be disposed of as follows: First to purchase an undivided one-half interest with myself in

the south half of the east half of the northeast quarter of section one, township 26, south, range 13 west of the Willamette Meridian, said land to cost $2,500.00, that is, the half interest, and the whole thereof $5,000.00.

"Two thousand dollars thereof to be used to secure an interest in a corporation to be formed to purchase the northeast quarter of the northeast quarter of said section one, at a cost including expense of incorporation, etc., of not to exceed $5,500.00. The interest in said corporation to be evidenced when formed by twenty shares of stock of the par value of $100.00 each, to be issued to the said K. M. Thimsen immediately after said corporation is formed.

"But should I be unable to purchase said property as above set forth, then so much of said sum as is not used to be returned to the said K. M. Thimsen.

"It is understood that either of the above properties shall be purchased at the terms and for the purpose stated, and one may be purchased without the other, but if either cannot be bought as above set out, the amount advanced to make the purchase of that tract which cannot be bought shall be returned to the said K. M. Thimsen.

"To all of which the parties hereto agree."

At that time Charles I. Reigard represented to the plaintiff that the two tracts of land could not be purchased for less than $10,000, and afterwards represented to the plaintiff that he had paid the Archer Land Company $10,000 for the land. He suppressed from plaintiff the actual price paid, and the fact that the Archer Land Company had authorized the execution of deeds for a purchase price of $8,000; and that one of the deeds had already been executed and sent to Owatonna, Minnesota, to be delivered as above stated. Plaintiff had confidence in defendant, Charles I. Reigard, and believed his representations until a short time before the commencement of this suit.

The defendant, Charles I. Reigard, paid the Archer Land Company the sum of $8,000 and no more for the lands, and used therefor the $4,500 given him by the plaintiff for that purpose, and the further sums of $142 and $62.50; which latter sums the plaintiff advanced to the defendant on the false representation made by him that they were necessary to complete the purchase of the lands.

When the deed sent to Owatonna, Minnesota, conveying the south one half of the tract, was delivered to the defendant, Charles I. Reigard, he filled in the names of Katharine M. Thimsen and Fannie L. Reigard, his wife, as grantees. His wife's name was inserted without the knowledge or consent of plaintiff. During all of the time of the dealings Charles I. Reigard acted as the agent of his wife, and she had notice of the relations existing between him and plaintiff. The plaintiff furnished $4,704.50 of the entire purchase price of $8,000 or 58.8 per cent thereof and she thereby became the equitable owner of an undivided 58.8 per cent of the land. Afterwards, the land deeded to plaintiff and Fannie L. Reigard was divided, each taking title to twenty acres. In the fall of 1910, the Laurel Investment Company was incorporated with a capital stock of $5,500, divided into shares of $100 each, which were issued as follows: 29 shares to Fannie L. Reigard, 1 share to Charles I. Reigard, 20 shares to Katharine M. Thimsen, and 5 shares to W. B. Clarkson. The Clarkson shares were afterwards assigned to H. A. Stensvad. The other 40-acre tract was conveyed by B. E. Lewis, to the Laurel Investment Company; and the land was afterwards platted into lots and blocks, as Laurel Addition to Coos Bay. Miss Thimsen paid her portion of the main expense thereof.

Plaintiff received 4/11 of the capital stock of the corporation which is equivalent to 14.53 acres of the land purchased, which with the twenty acres deeded to her is equivalent to 34.54 acres of land, or 43 per cent of the entire tract purchased. For $2,000 of the money furnished by plaintiff, twenty acres were conveyed to her, leaving to be put into the corporation $2,704.50 of her money.

About the time of the commencement of the negotiations, defendant sold to Bossart a part of the land afterwards platted as block 4 in Laurel Addition to Coos Bay, for $3,000, upon which there was paid $1,141.11; ten lots being conveyed to Bossart by a subsequent arrangement, and the contract canceled as to the remainder. These lots belonged to the corporation. From this amount of $1,141.11, collected by Charles I. Reigard, should be deducted his bill upon which there is a balance of $275.46 due him from the company. Reigard purposely suppressed the fact of the sale to Mr. Bossart from the plaintiff and has not accounted to her or the corporation therefor. The bill was presented and allowed by the directors of the corporation, September 8, 1917, and appears to be just and equitable except as to $10 thereof, which is offset by the amount which is justly claimed in the larger account. This leaves a balance of $865.65, one half of which or $432.85, according to the findings of the trial court belongs to plaintiff. Adding this amount to the cash furnished by plaintiff, makes an aggregate sum of $3,137.35, the amount of plaintiff's interest in the corporation. This equals 78.1 per cent of the entire amount invested by the corporation in the 40-acre tract of land. Plaintiff is entitled to 78.1 per cent of the 55 shares of capital stock of the Laurel Investment Company, or 42.95 shares of the face value of $4,295. Five

shares were issued to W. B. Clarkson and transferred to H. A. Stensvad, of the face value of $500. Defendants, the Reigards, are entitled to 7.05 shares of the face value of $705. The total number of shares is 55, par value $5,500.

January 3, 1912, defendant, Charles I. Reigard, presented to the corporation a bill for services and expenses against the corporation from February 2, 1910, to July 10, 1911, amounting to $1,837.48, upon which was credited $500 received for the Clarkson shares of stock and $90 received from the Archer Land Company on account of surveying, leaving a balance claimed of $1,247.48. No part of this claim is supported by proof showing that it is equitable or just, except the sum of $11.58; therefore the balance of Reigard's account above allowed, $275.46, should be in full settlement of both of the claims for services and expenses made by him against the corporation, and he should be required to convey to the Laurel Investment Company, twenty lots in block 4 of Laurel Addition to Coos Bay, the title to which is now held by him, being all of the lots in said block 4 not heretofore conveyed to A. S. Bossart.

The defendants, Charles I. Reigard and Fannie L. Reigard, therefore held in trust for plaintiff 22.95 shares, of the par value of $2,295, which they should assign and transfer to plaintiff on the stock books of the Laurel Investment Company.

1. The Circuit Court found that the equities of the case were with the plaintiff. This is amply supported by the testimony. The court awarded the plaintiff a decree for the amount of money she had furnished to purchase the two tracts of land, $1,264, together with interest thereon from January 18, 1910; and after adding a portion of the amount collected from Bossart, declared the amount due plaintiff to be an equitable

lien upon the lands owned by the defendant, Laurel Investment Company, and ordered the land sold to satisfy the amount due plaintiff. It is assigned that it was error to order the land of the corporation sold; for the reason that there were five outstanding shares held by H. A. Stensvad who is not a party to this suit, and that it would be detrimental to his interests to have the land so sold. We think this point is well taken; therefore we change the form of the decree.

Miss Thimsen invested her money in the purchase of the land. She appears to have been willing to speculate on the value of the land at the price it was purchased. At one time the defendants, Mr. and Mrs. Reigard, offered to return her investment with interest, if she so elected. We therefore think she should be adjudged to be the owner of her proportionate share of the capital stock in the corporation without ordering the land sold, and the shares transferred to her, if that can be accomplished.

In the event the defendants, Mr. and Mrs. Reigard, cannot transfer a sufficient amount of the capital stock to plaintiff for her share, the following computation should be applied. Plaintiff is entitled to $3,137.35 interest in the land of the corporation out of the $4,000 invested therein. She received an equivalent of 4/11 of $4,000, equal to $1,454.54. The difference between this amount and the interest to which plaintiff is entitled amounts to $1,682.81. In case the shares of stock cannot be transferred, as above ordered, plaintiff should have an equitable lien in the sum of $1,682.81, upon that portion of the land, the title to which is in the name of the Laurel Investment Company, represented by the 30 shares of capital stock held in the names of defendants, Fannie L. Reigard and Charles

I. Reigard, not including the interest represented by the 5 shares of stock held by H. A. Stensvad nor the lots sold and conveyed to parties other than Charles I. Reigard. Such interest in the land and shares of stock of defendants, Fannie L. Reigard and Charles I. Reigard, should be sold to satisfy the same. This would not affect the shares of stock held by Stensvad, except indirectly.

The trial court found, and there is abundant evidence supporting such finding, that after the organization of the corporation the same was dominated and controlled by the defendant, Charles I. Reigard. He was the agent and representative of defendant, Fannie L. Reigard, and dictated the policy of the company and managed and directed its affairs, and as such had notice and knowledge of all of the facts in relation to the company referred to herein and in the findings of the Circuit Court, and of the fraud practiced upon the plaintiff. The corporation and Fannie L. Reigard acquired such knowledge and notice through the defendant, Charles I. Reigard, and had the same at the time of the conveyance of the land to the corporation and the issuance of the 29 shares of stock to Fannie L. Reigard.

The Circuit Court found that the balance of the bill of defendant for $1,837.48, upon which a balance of $1,247.48 was claimed by defendant, Charles I. Reigard, was fraudulent and unwarranted. In this we concur. In addition to the $590 credited upon the latter bill, plaintiff also received payments for lots sold amounting to $200, making a total amount of $790 to offset the expenses of the corporation, such as license fees, taxes, and conducting the business.

The large account, $1,837.48, upon which there was a balance of $1,247.48 claimed by Reigard, was allowed

by Mr. and Mrs. Reigard, acting as directors of the corporation.

At the inception of the dealings between plaintiff and defendant, Charles I. Reigard, fiduciary relations between them were created, as shown by the agreement of January 18, 1910, set forth above. Defendants, the Reigards, are precluded from contradicting this covenant. The writing shows that Charles I. Reigard received from plaintiff $3,600 in cash, and a note for $900 which was afterwards paid, to purchase an undivided one-half interest in eighty acres of land, forty acres of which was to be secured for a corporation to be formed. Reigard was to purchase the interest as her agent in their joint adventure.

2–4. The modern decisions indicate that the courts regard the rights of joint adventurers, in matters between themselves, as governed by the principles constituting and controlling the law of partnership: 15 R. C. L., p. 500, § 1. We quote from page 501, Section 3, of that volume:

"The relation between joint adventurers is fiduciary in its character, and the utmost good faith is required of the trustee to whom the deal or property may be intrusted, and such trustee will be held strictly to account to his coadventurers, and he will not be permitted, by reason of the possession of the property or profits, whichever the case may be, to enjoy an unfair advantage, or have any greater rights in the property, by reason of the fact that he is in possession of the property or profits as trustee, than his coadventurers are entitled to. The mere fact that he is intrusted with the rights of his coadventurers imposes on him the duty of guarding their rights equally with his own, and he is required to account strictly to his coadventurers, and if he is recreant to his trust, any rights they may be denied are recoverable."

See *Templeton* v. *Bockler,* 73 Or. 494 (144 Pac. 405).

Under the agreement, Mr. Reigard had, no right to purchase the land from himself, either directly or indirectly, or to make a profit of $25 per acre on the deal, except with the full knowledge and consent of his principal, Miss Thimsen. The burden of proof is upon Reigard, as such agent, to show that he fully informed Miss Thimsen, his principal, of all the facts within his knowledge bearing upon the transaction. This he failed to do: 2 C. J., p. 703, § 361; *Jones* v. *Sheffler* 77 Or. 284 (151 Pac. 463); *McNiel* v. *Holmes,* 77 Or. 165 (150 Pac. 255).

5. The general rule is based upon our great moral obligation to refrain from placing ourselves in relations which ordinarily excite a conflict between self-interests and integrity. It serves as a restraint upon all agents: *Michoud* v. *Gired,* 4 How. (U. S.) 503 (11 L. Ed. 1076, see, also, Rose's U. S. Notes). Miss Thimsen was betrayed by her agent into paying for the property in excess of the price for which Reigard, her agent, obtained it; and is entitled to recover. An agent who makes a secret profit in the execution of his trust, as such agent, may be compelled to disgorge: *Sandoval* v. *Randall,* 222 U. S. 161 (56 L. Ed. 142, 32 Sup. Ct. Rep. 48, see also, Rose's U. S. Notes). In the latter case the syllabus reads thus:

"Where one agrees to act as agent to purchase property at not exceeding a specified price, he cannot avail of an unexpired option antedating the employment to purchase the property at a less price himself and make the difference."

6. The rule as to notice is laid down in the case of *The Distilled Spirits,* 11 Wall. 356, at page 366 (20 L. Ed. 167, see, also, Rose's U. S. Notes), in effect as follows: The rule that notice to the agent is notice to

the principal applies not only to knowledge acquired by the agent in the particular transaction, but to knowledge acquired by him in a prior transaction and present to his mind at the time he is acting as such agent in the particular transaction, provided it be of such a character as he may communicate to his principal without breach of professional confidence: See *McIntyre* v. *Pryor,* 173 U. S. 38, 52 (43 L. Ed. 606, 19 Sup. Ct. Rep. 352, see, also, Rose's U. S. Notes). Mrs. Reigard must be held to have had legal notice of the fraudulent conduct of her husband and agent, in the matters pertaining to the purchase of the land and the corporate transactions.

The two decrees of the lower court will therefore be modified, and one entered declaring the plaintiff, Katharine M. Thimsen, to be the equitable owner of 42.95 shares of the capital stock of the Laurel Investment Company, of the face value of $4,295; 22.95 of which shares are now held by Fannie L. Reigard and Charles I. Reigard in trust for plaintiff; that Charles I. Reigard and Fannie L. Reigard be ordered to assign and transfer to plaintiff 22.95 shares of capital stock of the Laurel Investment Company, a corporation, which are held in trust by them for plaintiff; in the event that said 22.95 shares of stock cannot be transferred to plaintiff free and clear of any claim thereto, then in addition to the 4/11 interest of plaintiff in the land of the Laurel Investment Company, represented by her twenty shares of the capital stock, the plaintiff is entitled to an equitable lien for the sum of $1,682.81 upon the lands of the Laurel Investment Company, represented by the thirty shares of capital stock held by defendants, Charles I. Reigard and Fannie L. Reigard; that such lien be foreclosed and the interest in said land represented by said thirty shares of stock

held by defendants, the Reigards, be sold upon execution to satisfy this decree; that the defendants Charles I. Reigard and Fannie L. Reigard, his wife, be ordered to make, execute, and deliver to the Laurel Investment Company, a deed of conveyance of all of block four, in Laurel Addition to Coos Bay, excepting ten lots heretofore conveyed to A. S. Bossart; and in the event of failure to so execute such deed, this decree shall stand as and for the same, and be recorded as such conveyance; that each party pay their own costs of this suit in this court; the costs in the lower court to be paid as there adjudged.

As above modified, the decree of the lower court is affirmed.                    AFFIRMED AS MODIFIED.

McBRIDE, C. J., and JOHNS and BENNETT, JJ., concur.