## COHEN v. FRIMA PRODUCTS CO.
### No. 12971.

United States Court of Appeals
Fifth Circuit.

April 10, 1950.

Daniel F. Pariser, Louie Bandel, T. A. Whiteside, all of Miami, Fla., for appellant.

Sam Silver, of Miami, Fla., for appellee.

Before HUTCHESON, Chief Judge, and WALLER and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

Appellant assigns error upon the judgment of the trial Court, sitting without a jury, entered in favor of the appellee. Appellee as the plaintiff, instituted suit against appellant as the defendant for the agreed price of 879 lugs of tomatoes purchased after inspection and supervision of the packing, and which were delivered to the defendant's agent in Havana, Cuba, and for which the said agent delivered to plaintiff a check in the amount of $3129.40 upon which payment was stopped. The answer was a denial of indebtedness, an admission of the purchase and delivery of the tomatoes, the delivery of the check and the stoppage of payment, which was justified for the reason that the tomatoes were infected with a disease known as late blight. The defendant plead that the tomatoes were expressly warranted by the plaintiff to have come from fields free from late blight, which fields had been inspected and were so known; that inspection at the time would not have revealed the existence of blight; that inspection of the fields would have revealed said fields to be infected, and that in the purchase the defendant's agent relied wholly and exclusively upon the said express warranty of plaintiff's agent. There was also plead a cross claim for freight charges and denial thereof, which are not now material. Upon the trial there was

evidence as to the purchase, inspection, selection and delivery of the tomatoes so selected, the giving of the check in payment thereof, the appearance of blight in the tomatoes, discovered after shipment by the purchaser to Port Everglades, Florida, and with reference to steps taken by the purchaser to reship the tomatoes to New York which was effectuated by stating the seller as consignor and consignee, the consignee being later changed to the Cuban-American Fruit Company. The material question, however, relates to the question of the warranty. As to this, there was direct conflict in the evidence of the plaintiff and the defendant, the defendant's agent contending that he was experienced in the produce business and as well qualified as anybody else to pick good merchandise; that he was aware that there were blighted tomato fields in Cuba, and in making the purchase Friedman, plaintiff's agent, "had told him that the tomatoes were from fields guaranteed free from blight; that Friedman said he knew which tomatoes came from blighted fields and which did not." The contradictory testimony in behalf of the plaintiff was that he was asked if he had good tomatoes and replied "You have always purchased tomatoes from me in the past. All tomatoes to me in Cuba are the same. If you want to buy my tomatoes you can look at them, watch them packed, pick them out, do anything you want to; once you take them they are yours." Further that "there was nothing whatever said about blight guarantee, warranty or anything else at that time." It is clear that the defense to the suit was by pleading and evidence predicated solely upon an express warranty of freedom from blight, and this being the material and controlling question in the case, as to which the evidence was in conflict, the finding of the trial Judge in favor of the plaintiff's contention is amply supported by the evidence and may not be overturned.

Other issues are sought to be presented here by the parties seeking a ruling upon whether the inspection by the purchaser had relieved the seller from the implied warranty of fitness for use and marketability, and also whether the provisions of the Federal Perishable Agricultural Commodities Act, 7 U.S.C.A. § 499 et seq., required a different finding by the Court, and also whether the finding was contrary to what is contended are the established customs and usages of the produce business. As to the first contention, as we view the issues here under the pleadings and the evidence, it is elemental law that an express warranty as to any particular matter excludes any implied warranty with reference to the same matter or matters.[1] Under the evidence here, the express warranty relied upon as to freedom from blight included the matter of marketability of the tomatoes, for while such blight is not discoverable by inspection immediately after picking or packing, requiring some 48 to 60 hours to develop, if it is existent within the tomatoes, such tomatoes are, as to the extent infected, unmarketable. Manifestly this was well known to these experienced produce sellers and buyers and was the exact matter to which the plead and testified warranty related. There was therefore in this case no basis for application of any implied warranty, and the question sought to be presented does not properly arise.

The penalty provisions of the Federal Agricultural Commodities Act were "not intended to repeal the law of sales or to destroy the rights and liabilities of the contracting parties thereunder[2]." Thus even if this statute were applicable here, it affords the defendant no relief since it is established by the finding of the Court that it was he who breached the contract.

The conflicting evidence as to custom and usage, could not establish an implied warranty where none existed in law because of the express warranty plead and sought to be proved.

The judgment of the trial Judge is supported in law and upon the facts and is affirmed.

1. 55 C.J. 722, Sec. 705.

2. LeRoy Dyal Co., Inc., v. Allen, 4 Cir., 161 F.2d 152, 157.